IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSALIE R. MOORE,                    *

        Plaintiff,                   *

            v.                       *        Civil Action No. RDB-11-00290

SPRINT COMMUNICATION              *
COMPANY, LP,
                                     *

        Defendant.

*       *       *       *       *       *       *       *       *       *       *       *       *

## MEMORANDUM OPINION

Plaintiff Rosalie R. Moore ("Plaintiff" or "Moore"), now proceeding *pro se*,[1] initially

brought this employment discrimination action against her former employer, Defendant

Sprint Communications Company, LP ("Defendant" or "Sprint"), in the Circuit Court of

Maryland for Baltimore City.  Subsequently, Sprint removed the case to this Court on the

basis of diversity jurisdiction[2] pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  The Amended

Complaint alleges age and disability discrimination in violation of the Maryland Human

Relations Act ("MHRA"), Maryland Annotated Code, State Government Article §§ 20-1013

*et seq.*[3] (Counts I & II), violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §

---

[1] Moore was initially represented by counsel, however, during the discovery period, this Court granted counsel's Motion to Withdraw as Attorney (ECF No. 27).

[2] Moore is a citizen of the State of Maryland and Defendant is a Delaware Limited Partnership with its principal place of business in Kansas City, Missouri.  Notice of Removal ¶¶ 6, ECF No. 1.  Moreover, Moore sought damages in the amount of $100,000 in the initial complaint which meets the amount in controversy requirement.  *Id.* ¶ 5; Pl.'s Compl. ¶¶ 15, 17, ECF No. 2.  In the Amended Complaint, Moore increased the amount of damages sought to $300,000 and added the Family Medical Leave Act claim in Count III as well as the malicious prosecution claim in Count IV.  Pl.'s Am. Compl. ¶¶ 17, 19, 24, 32, ECF No. 22.

[3] Article 49B of the Maryland Annotated Code was re-codified as Title 20 of the State Government Article on

2601 *et seq.* (Count III), and malicious prosecution (Count IV).  After a period of discovery, Defendant Sprint filed a Motion for Summary Judgment (ECF No. 33) pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendant Sprint Communications Company, LP's Motion for Summary Judgment (ECF No. 33) is GRANTED and judgment shall be entered in its favor against Plaintiff Rosalie R. Moore.

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  At the time of the complaint, Plaintiff Rosalie R. Moore ("Plaintiff" or "Moore") was 47 years old and resided in Glen Burnie, Maryland.  Pl.'s Am. Compl. ¶¶ 2-3, ECF. No. 22.  She had been employed by Defendant Sprint Communications Company, LP[4] ("Defendant" or "Sprint") since 1995 until her termination on April 27, 2009.  Moore Dep. at 20:21-21:2, 65:1-6, Def.'s MSJ Ex. 1, ECF No. 33-2.  She held a number of positions with the company.  *Id.* at 21:6-26:11.  In February 2006, Moore was promoted to a Program/Project Manager position and remained in that position until her termination.  *Id.* at 25:2-26:11.  As a Program/Project Manager, Moore was "responsible for ensuring that the requisite information for Sprint's new indirect

---

October 1, 2009.
[4] Moore was initially hired by Nextel Communications, Inc. which merged with Sprint Corporation in 2004 to form Sprint Nextel Corporation.  Def.'s MSJ Ex. 2, ECF. No. 33-3.  As a result of the merger, her employer became Sprint/United Management ("SUMC") which is a wholly-owned subsidiary of Sprint Nextel Corporation.  King. Aff. ¶ 4, Def.'s MSJ Ex. 3, ECF No. 33-4; Disclosure Statement, ECF No. 5.

dealers[5] was properly entered into its databases and . . . that terminated indirect dealers were removed from Sprint's computer systems." Def.'s Mem. in Supp. of MSJ at 2, ECF No. 33-1.

Moore alleges that while being employed by Sprint, she "alternated her work between her residence, defendant's office in Columbia, Maryland and the office in Reston, Virginia." Pl.'s Am. Compl. ¶ 3. Her employment discrimination charge, however, indicates that in June 2008, her new supervisor, Ms. Jennifer Kott ("Kott"),[6] who was ten years her junior, "advised [her] that [she] could no longer work at the Columbia, Maryland site three (3) days a week." Charge of Discrimination at 1, Def.'s MSJ Exs. 25 & 26, ECF Nos. 33-26 & 33-27. Kott also claims that while under her supervision, Moore "worked out of Sprint Nextel Corporation's Reston, Virginia headquarters, and . . . occasionally worked from home in Maryland as well." Kott. Aff. ¶ 3.

The record reflects that as of February 2008, Moore's work performance became problematic. First, David Serra, her supervisor from February to May 2008, stated that he "had concerns with Ms. Moore's ability to perform her job at an acceptable level." Serra Aff. ¶ 3, Def.'s MSJ Ex. 6, ECF No. 33-7. From May until July 2008, she was supervised by William Fleming, and thereafter by Kott until her termination. King Aff. ¶ 6, Def.'s MSJ Ex. 3, ECF No. 33-4. On August 4, 2008, Fleming issued Moore's first verbal warning for "failure to meet performance/operational standards." Action Plan for Improvement, Def.'s

---

[5] "An indirect dealer is an authorized retailer of Sprint's products that works as a subcontractor of a larger authorized dealer of Sprint's products." Kott. Aff. ¶ 4, Def.'s MSJ Ex. 4, ECF No. 33-5.
[6] Kott was Moore's direct supervisor from July 2008 until her termination in April 2009. Kott. Aff. ¶ 3.

MSJ Ex. 7, ECF No. 33-8. This warning concerned behavior observed by both Fleming and Kott. Moore Dep. at 43:13-44:21. Specifically, Fleming reported that Moore had failed to (1) enable her out-of-office assistant while on vacation, (2) complete shipment arrangements, (3) complete her mid-year performance review as instructed, and (4) respond to email action items according to the standard response time of three (3) days. *Id.* The warning form or "Action Plan for Improvement" also listed corrective measures and explicitly stated that the consequences for failing to improve pursuant to the plan could lead to "further corrective action . . . up to, and including termination." *Id.* Additionally, the form explained that if an employee is given a written or final warning, he or she "will not be eligible to apply for any other position within the Company without the approval of the Area Vice-President." *Id.*

During her deposition in this case, Moore was asked to review and did not object to a number of communications between herself and Kott, in which Kott emphasized her lack of accuracy in the performance of her duties and the high number of escalations[7] Kott received relating to Moore. Moore Dep. at 77:1-79:18, 81:1-84:19, 87:1-88:20. In these communications, Kott repeatedly stressed that accuracy was a crucial requirement of Moore's position. *Id.* at 77:18-78:1. Moore was also criticized for her slow turn-around time in responding to clients' requests and issues. *Id.* at 81:3-10, 84:1-10.

On December 8, 2008, Kott issued a written warning to Moore for "failure to meet performance/operational standards [and] failure to meet personal effectiveness/behavioral standards." Def.'s MSJ Ex. 17, ECF No. 33-18. This warning listed fourteen areas in which

---

[7] An escalation occurs when an internal customer contacts a supervisor because an issue is not promptly addressed by an employee. Moore Dep. at 81:15-18.

Moore's performance was deficient centered on her lack of accuracy and responsiveness as well as her failure to follow company policy. *Id.* Finally, the record reflects that Moore's performance continued to be problematic as Kott issued a Final Written Warning against her on March 4, 2009. Def.'s MSJ Ex. 18, ECF No. 33-19. Notably, the warning was dated February 25, 2009 but Kott waited until a week later to file it. *Id.* Both the first and final written warnings listed corrective measures whereby Moore could cure her performance deficiencies. Def.'s MSJ Exs. 17& 18. However, in her Complaint, Moore alleges that these improvement plans were evidence of disparate treatment on the basis of her age. Pl.'s Am. Compl. ¶ 7. She further alleges that prior to issuing the final written warning, Kott told Moore that she "had a surprise" for her and that she should take the voluntary severance package the company was offering.[8] Pl.'s Rep. in Opp. to MSJ at 5, ECF No. 35. However, the chat log conversation submitted by Moore indicates that Kott and Moore had a misunderstanding. Pl.'s Resp. in Opp. to MSJ Ex. 6, ECF No. 35-5.[9] In this document, Kott is seen trying to explain to Kott that she did not have a surprise for her, but that instead she did not want her to be surprised when becoming aware that Kott had filed a final written warning. *Id.* at 2-3.

Two weeks after receiving her final warning, beginning on March 17, 2009, Moore

---

[8] This is the only instance in which Moore refers to the voluntary severance package and nothing in the record indicates that she was offered this type of package.

[9] Although Defendant challenges the admission of most of Moore's exhibits to her response in opposition on hearsay and authentication grounds, Defendant has not objected to Exhibit 6. Def.'s Reply at 2, ECF No. 37. Moreover, in the context of *pro se* litigants, pleadings are "to be liberally construed," and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

took off work claiming that she was suffering from asthma, migraines and stress.[10]  Moore

Dep. at 100:12-20.  Because she was out for a number of days, the Sprint Leave Management

Group contacted her to inquire about her absence and advised her to apply for leave under

the Family Medical Leave Act ("FMLA") and the Sprint short-term disability ("STD") plan.

*Id.* at 101:20-102:5.  On March 27, 2009, Moore completed an application for both FMLA

and STD leave as Sprint uses the same form to determine eligibility for either leave.  Def.'s

MSJ Ex. 3 ¶ 7; Def.'s MSJ Ex. 19, ECF No. 33-20.  Her physician listed April 4, 2009 as her

return date.  Def.'s MSJ Ex. 19.  Her FMLA and STD leave were thereafter approved from

March 20 and 27, 2009, respectively, until April 4, 2009.  *Id.*; Spring Leave Management

Group Ltr., Def.'s MSJ Ex. 20, ECF No. 33-21.  Additionally, Moore was informed that to

extend her leave she needed to "*submit an Attending Physician's Extension of Disability form*

*completed by [her] health care provider . . . accompanied by medical records to support an extension of STD*

*benefits*" and including the new estimated date on which she would return to work.  *Id.*

(emphasis in original).  Moore admitted receiving this letter but explained that she did not

read it.  Moore Dep. at 106:10-12.

Moore did not return to work as planned on April 4, 2009 and faxed an extension of

disability request to Sprint on April 6, 2009.  Extension of Disability Form, Def.'s Ex. 21,

ECF No. 33-22.  Although the form indicated that a new return date was required, the

return date section of Moore's extension request remained blank.  *Id.*  As a result, Sprint

---

[10] During her deposition, Moore testified that she suffered from adult onset asthma and that it did not
interfere with her ability to work.  Moore Dep. at 135:10-136:11.  She further testified that she had to use a
special machine for her treatments which required her to stop working for anywhere from 10-30 minutes per
treatment but that it did not last eight hours.  *Id.* at 136:12-138:7.  She also stated that she could use the
machine on breaks from work.  *Id.* at 138:8-11.

6

informed Moore on April 10, 2009 that her request would not be processed until her health care provider had filled the return date section of the form.  Def.'s MSJ Ex. 22, ECF No. 33-23.  She was given until April 20, 2009 to update her request.  *Id.*  Unfortunately, Moore did not cure this default and failed to return to work.  Moore Dep. 110:4-111:1.  Accordingly, on April 21, 2009, Sprint sent her a letter retroactively terminating her leave of absence.  Def.'s MSJ Ex. 23, ECF No. 33-24.  Upon receiving this letter, Moore contacted the Leave Management Group and was again informed that she needed to direct her health care provider to indicate a return date on the extension request form before her request could be processed.  Moore Dep. 111:14-113:8.  Moore then received a letter from Kott dated April 22, 2009 instructing her to return to work on April 25, 2009 or alternatively face termination.  Def.'s MSJ Ex. 24, ECF No. 33-25.  Moore neither reported to work nor updated her extension of disability leave request and as a result was discharged from her employment on April 27, 2009.  Moore Dep. at 114:5-115-10.

Upon being discharged, she was required to return the company-issued computer given to her to allow her to work remotely to Defendant's Reston, Virginia office.  Moore Dep. at 117:18-20.  However, Moore did not return this computer until over a year later after her arrest by the Maryland State Police.  Crim. Invest. Report, Def.'s MSJ Ex. 29, ECF No. 33-30.  In fact, because she had failed to return the computer, Sprint's Corporate Security Department contacted the Fairfax County Police Department and filed a Police Report for larceny against her on May 29, 2009.  Police Report, Def.'s MSJ Ex. 27, ECF No. 33-28; Murphy Aff., Def.'s MSJ Ex. 28, ECF No. 33-29.  On July 1, 2010, the Maryland State Police

arrested Moore in her home pursuant to a fugitive warrant related to the police report. Crim. Invest. Report, Def.'s MSJ Ex. 29.  According to Moore she spent thirteen (13) days in jail, until her husband returned the computer and Sprint dropped the charges.  Pl.'s Resp. in Opp. at 6; Def.'s MSJ Ex. 28, ECF No. 33-29.  Moore also claims that Kott had told her that she would send a FedEx package for her to use to return the computer.  Moore Dep. 118:1-21, 120:1-121:4.  Moore further alleges that she did not return the computer because this package never came.  *Id.*  She was not aware that a report had been filed against her until the police came to her house on July 1, 2010.  *Id.* 131:8-132:20.

Prior to her termination, on April 7, 2009, Moore filed a Charge of Discrimination with the Equal Employment Commission ("EEOC") and the Maryland Commission on Human Relations ("MCHR").  Charge of Discrimination, Def.'s MSJ Ex. 25, ECF No. 33-26.  In it, she alleged age discrimination and retaliation in relation to the warnings she received from Kott.  *Id.*  On her EEOC intake questionnaire which she signed on March 16, 2009, she indicated that she did not have a disability[11] and nowhere in her charge did she make a claim for disability discrimination.  EEOC Intake Questionnaire, Def.'s MSJ Ex. 31, ECF No. 33-32.  After her termination, Moore updated the discrimination charge to reflect her termination date.[12]  Am. Charge of Discrimination, Def.'s MSJ Ex. 26, ECF No. 33-27.  Following its investigation into the matter, the EEOC rejected her claim and issued a right to sue letter on August 27, 2010.  Dismissal & Notice of Rights, ECF No. 15-3.  Moore then

---

[11] The intake questionnaire also includes a claim for race based discrimination, but Moore later stipulated that this was a mistake.  Moore Dep. at 60:1-19, 125:6-6.

[12][12] Apart from the added date both charges of discrimination are the same.  Moore Dep. 65:7-9.

filed the original complaint in this case in the Circuit Court of Maryland for Baltimore City on November 19, 2010.  Pl.'s Compl., ECF No. 2.  Defendant removed this case before this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441 and 1446 on February 2, 2011.  Notice of Removal, ECF No. 1.  Moore was initially represented by counsel but is now proceeding *pro se* due to his withdrawal from the case.  Order, ECF No. 27.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).  If the evidence presented by the nonmoving party is merely

colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*,

477 U.S. at 249-50.  On the other hand, a party opposing summary judgment must "do more

than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*,

190 F.3d 624, 633 (4th Cir. 1999).  This Court has previously explained that a "party cannot

create a genuine dispute of material fact through mere speculation or compilation of

inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>ANALYSIS</u>

## I.      Plaintiff's Age and Disability Discrimination Claims (Counts I & II)

Plaintiff Moore alleges age and disability discrimination in violation of the Maryland

Human Relations Act ("MHRA"), Maryland Annotated Code, State Government Article §§

20-1013 *et seq.*  Defendant Sprint contends that it is entitled to summary judgment as to these

claims because: (1) Virginia state law applies as opposed to Maryland law, (2) Moore failed to

exhaust her administrative remedies with respect to her disability claim, and (3) Moore failed

to meet her burden to prove that Sprint discriminated against her on the basis of her age or

her disability.

1. <u>Choice of Law</u>

The Circuit Court of Appeals for the Fourth Circuit has held that "discrimination

actions in general are tort or tort-type actions and damages awarded for violation of that

right are damages for personal injuries."  *Thompson v. Comm'r of Internal Revenue*, 866 F.2d 709,

712 (4th Cir. 1989).  "A federal court, in a diversity action, must apply the substantive law of

the state in which it sits, including that state's choice-of-law principles." *Lewis v. Waletzky*, 31 A.3d 123, 129 (Md. 2011) (citation omitted).  In Maryland, the choice of law principle is the doctrine of *lex loci delicti commissi* –the law of the place of the harm.  *Id.* (citing *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006) ("[W]here the events giving rise to a tort action occur in more than one State, we apply the law of the State where the injury—the last event required to constitute the tort—occurred.").  This Court has also applied this principle.  *See Yeibyo v. E-Park of DC, Inc.*, DKC-07-1919, 2008 WL 182502, at * 5 (D. Md. Jan 18, 2008) (holding that District of Columbia law occurred where although "payroll processing took place in Maryland, the injury—failure to pay as required—would have occurred in the District of Columbia, where [p]laintiffs worked and lived."); *see also Fearon v. Hagerstown Trust Corp.*, AW-05-921, 2006 WL 4005580, at *2 (D. Md. Feb. 23, 2006) (applying Maryland law to a malicious prosecution claim where the defendant allegedly reported certain transactions by plaintiff to the Maryland Police Department.).

In this case, although Moore had the flexibility of working remotely from home, as of June 2008, her primary office was the Sprint Reston, Virginia headquarters.  Moore herself acknowledges in her discrimination charge that at that time, Kott, her supervisor, informed her that she could no longer work in the Columbia, Maryland office.  Moreover, the record reflects that the warnings she received from August 2008 until March 2009 were filed in the Reston office and that she had to go to that office to discuss them with her supervisor. Additionally, Moore specifically based her allegations of age and disability discrimination on her receipt of these warnings.  Finally, Moore was required to return the company-issued

computer to the Reston office and Sprint filed its police report against her with the Fairfax County Police Department. Accordingly, Maryland law is not applicable and Virginia law governs. As a result, Moore cannot bring claims against Sprint under Title 20 of the Maryland Code and Sprint is entitled to judgment as a matter of law concerning these claims.

2. Plaintiff's Age and Disability Discrimination Claims

Even if Maryland state law were applicable, Moore could not meet her burden of proof to show that Kott discriminated against her on the basis of age by issuing written warnings concerning her poor work performance. Maryland courts routinely look to Title VII cases to determine a defendant's scope of liability under this Title 20 of the Maryland Code. *See, e.g., State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 277 (Md. 2003). Accordingly, to establish a *prima facie* case of age discrimination, Moore must demonstrate that (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) she was subjected to an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). If Moore establishes a *prima facie* case, "a presumption of illegal discrimination arises" and Sprint must now produce evidence of a legitimate non-discriminatory reason for its adverse employment action. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). After Sprint meets its burden, Moore must then prove by a preponderance of the evidence, "that the proffered reason was not the true reason for the employment decision [and that she was] . . . the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

12

Moore has failed to establish a *prima facie* case of age discrimination.  First, although Moore is about ten years older than Kott and was discharged, the record is clear that Moore's performance at the time of her discharge was not satisfactory and had not been satisfactory since at least February 2008.  Second, the record is devoid of any evidence that similarly situated employees outside of her class were treated differently.  While she alleged as much, she failed to provide admissible proof in support of this allegation.  She did not introduce affidavits or depositions from her co-workers or business records from Defendant.  In fact, the employee she identifies as a comparator in her Response in Opposition was not a Sprint employee but a "contractor supplied by a temporary staffing agency."  King. Supp. Aff. ¶ 4, Def.'s Reply Ex. B, ECF No. 37-2.

Additionally, Sprint proffered a legitimate non-discriminatory reason for her termination.  Specifically, she was terminated for failing to comply with the company's leave policies.  She failed to submit a complete leave extension form within the extended delay provided by the company.  The Fourth Circuit has stated that: "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.' "  *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette v. Cornin Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).  A Court should not second-guess an employer's appraisal.  *Hawkins*, 203 F.3d at 280.  Rather, the Court's sole concern should be "whether the reason for which the defendant discharged the plaintiff was discriminatory."  *Id.* (quoting *DeJarnette*, 133 F.3d at 299).  The Fourth Circuit

13

has also stated that it does "not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision." *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994). In this case, Moore not only fails to establish a *prima facie* case of age discrimination, but she also fails to establish that Sprint's legitimate non-discriminatory reason was a pretext. Hence, Moore fails to satisfy her burden of proof with respect to her age discrimination claim under the "burden-shifting" scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973).

Moore's Complaint also alleges disability discrimination under Title 20 of the Maryland Code. Title 20 provides that a plaintiff must "initially file[ ] a timely administrative charge or a complaint under federal, State or local law alleging an unlawful employment practice by" a defendant prior to bringing a disability discrimination claim under Maryland law. Md. Code. Ann., State Gov't § 20-1013. A plaintiff's complaint must include "the particulars of the alleged discriminatory act." *Id.* ¶ 20-1004. Title 20's administrative requirements are akin to those of Title VII. *See Cuffee v. Verizon Commc'ns Inc.*, 755 F. Supp. 2d 672, 678 (D. Md. 2010). Under Title VII, "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002). "[T]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005). While EEOC charges are often prepared by self-represented individuals, their purpose is to place the employer on notice of a discrimination charge and allow the Equal Employment Opportunity Commission ("EEOC") the opportunity to investigate and

resolve the dispute.  *See  Greene v. Whirlpool Corp.*, 708 F.2d 128, 130 (4th Cir. 1983), *cert. denied,* 464 U.S. 1042, 104 (1984).

In this case, both the original and amended versions of Moore's discrimination charge do not contain any allegations of disability discrimination.  Moreover, on the EEOC Intake Questionnaire, Moore selected that she did not have a disability.  Although she alleged that her medical leave was based on asthma, migraines and stress, Moore failed to present any evidence from her doctor indicating that her asthma was a disability. Conversely, in her deposition, Moore testified that her asthma did not inhibit her ability to work.  Even when needing to take breathing treatments via a machine dispenser, she testified that she could still perform her responsibilities and that at most the treatments took about thirty minutes and could be done during breaks.

This Court has previously held that asthma is not a disability when an individual only intermittently suffers from it, but is otherwise able to work.  *See Jenrette v. Montgomery Cnty. Gov't*, DKC-09-1777, 2010 U.S. Dist. LEXIS 71422, at * 13 (D. Md. July 16, 2010); *Mayers v. Washington Adventist Hosp.*, 131 F. Supp. 2d 743, 749-50 (D. Md. 2001) (holding that a plaintiff could not establish that her asthma substantially limited her ability to breathe where the plaintiff "only experienced temporary difficulty in breathing when subject to the extreme environmental conditions allegedly found in her former workplace or season changes."); *see also Sanders v. Balt. Cnty.*, 163 F. Supp. 2d 564, 569-70 (D. Md. 2001).[13]  Accordingly, Moore

---

[13] The last two cases cited above were decided prior to the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, 3553-55 which rejected the limiting interpretation of the term "substantially limits" in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) in favor of a broader view as embodied in *School Board of Nassau County v. Arline*, 480 U.S. 273,

has failed to exhaust her administrative remedies with respect to her disability discrimination claim.   Even if she had exhausted her administrative remedies, her own admissions conclusively prove that she could not establish a disability discrimination claim.   Because no issues of material fact exist with respect to Moore's age and disability discrimination claims, Defendant Sprint is entitled to judgment as a matter of law with respect to Counts I and II.

## II.   Plaintiff's Federal Medical Leave Act Claim (Count III)

Count III of the Complaint alleges that Defendant Sprint violated the Federal Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.* when it terminated her employment while she was on FMLA leave.   Defendant contends that her claim fails as a matter of law because she was no longer receiving FMLA leave when she was discharged.

Under the Federal Medical Leave Act, "an eligible employee[14] shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."   29 U.S.C. § 2612(a)(1)(D).   It is unlawful for employers to (a) "interfere with, restrain, or deny the exercise of" this right, or (b) "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]."   29 U.S.C. § 2615(a).   A plaintiff can bring an interference claim under the first prohibition or

---

281 (1987) (holding that a person's ability to work can be substantially limited by the negative reactions of others to an impairment.).   However, their holdings are instructive.

[14] "The term "eligible employee" means an employee who has been employed (i) for at least 12 months by the employer . . . ; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period."   29 U.S.C. § 2611(2)(a).   Recently, this Court held that to state a claim under the FMLA, a complaint must demonstrate compliance with these requirements.   *See Anusie-Howard v. Bd. of Educ. of Baltimore Cnty.*, WDQ-12-0199, 2012 WL 1964097 at *2-3 (D. Md. May 30, 2012).   The record in this case reflects that this requirement was met.

a retaliation claim under the second one.  *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006).

In this case, Moore brought a retaliation claim for disability discrimination.  "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)."  *Id.* at 551 (citing *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001)).  Accordingly, she must first establish a *prima facie* case of retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 802.  Second, the burden shifts to the employer, Sprint, to provide a non-discriminatory reason for the adverse action.  *Id.*  Finally, she must demonstrate that the employer's stated non-discriminatory reason was pretextual.  *Id.* at 804.

To establish a *prima facie* case of retaliation under the FMLA, Moore needs to demonstrate (1) that she engaged in a protected activity, (2) that her employer took a "materially" adverse action against her and (3) that a causal connection existed between the activity and the adverse action.  *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 514-15 (D. Md. 2011) (citing *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)).  This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protected activity."  *Cepada*, 814 F. Supp. 2d at 515 (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

The record reflects that Moore was not discharged because she availed herself of her right to take a FMLA leave.  First, her leave was scheduled to end on April 4, 2009.  When

17

Sprint was informed that she had filed an incomplete extension request, the Leave Management Group gave her until April 20, 2009 to provide the required information. Moore failed to comply with this request and merely submitted the same incomplete application.  On April 21, 2009, Sprint informed Moore that her leave had been retroactively terminated on April 4, 2009 because she failed to provide support for her absence beyond that date.  The letter also indicated that Moore had forty-five (45) days to appeal this decision.  The next day, her supervisor sent her another letter explaining that if she did not report to work by April 25, 2009, her employment would be terminated.  Moore neither appealed the Leave Management Group's decision nor reported to work on April 25.  Her supervisor gave her two additional days to report to work or provide the necessary information to support her leave extension request before informing Moore that she was discharged.  As a result, Moore cannot establish a *prima facie* case of retaliation under the FMLA.  Moreover, as discussed above, Moore has failed to provide a scintilla of evidence to show that Sprint's legitimate non-discriminatory reason for her termination was pretextual. Accordingly, no dispute of material fact remains with respect to Moore's Federal Medical Leave Act claim and Defendant Sprint is entitled to summary judgment as a matter of law on this count.

## III.    Plaintiff's Malicious Prosecution Claim (Count IV)

Moore's last claim alleges malicious prosecution against Defendant Sprint with respect to her arrest in Maryland pursuant to a fugitive warrant on July 1, 2010.  As explained above, with respect to torts claims, courts in Maryland must apply the law "of the

State where the injury—the last event required to constitute the tort—occurred." *Hood*, 911 A.2d at 845.  In the context of malicious prosecution claims, courts have applied the law of the state in which the police report was filed.  *Fearon v. Hagerstown Trust Corp.*, AW-05-921, 2006 WL 4005580 (D. Md. Feb. 23, 2006).  As Sprint's Police Report concerning the larceny of its computer by Moore was submitted to the Fairfax County Police Department in Virginia, Virginia law applies.

"In an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 708 S.E.2d. 884, 889 (Va. 2011) (citation omitted).  The malice requirement "requires demonstrating more than merely a lack of probable cause." *Merchant v. Fairfax Cnty.*, 778 F. Supp. 2d 636, 650 (E.D. Va. 2011) (citing *Reilly v. Shepherd*, 643 S.E.2d 216 (2007).  The plaintiff must "demonstrate that the defendant possessed 'any *controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished.' " *Merchant*, 778 F. Supp. 2d at 650 (quoting  *Hudson v. Lanier*, 497 S.E.2d 471, 473 (1998) (emphasis in original).  Virginia courts do not favor "[a]ctions for malicious prosecution arising from criminal proceedings" and impose more stringent requirements on maintaining these claims then in other tort case. *Id.* (citation omitted).

The events with respect to this claim are that after her termination Moore was instructed to return the company-issued computer in her possession.  Moore did not return

said computer until over a year later after being arrested in Maryland pursuant to a fugitive warrant.  While Moore claims that she was promised a FedEx package in which to return the computer, she never contacted Sprint to determine whether the envelope was on its way or whether other arrangements were to be made.  On its end, Sprint alleges that Moore was to personally return the computer to the Virginia office.  Her supervisor also denies having agreed to send her a FedEx package in which to return the computer.

On May 29, 2009, because Moore had not returned the computer, Sprint's Corporate Security department filed a police report for larceny with the Fairfax County Police Department in Virginia.  Over a year later, on July 1, 2010, Moore was arrested at her home by the Maryland State Police pursuant to a fugitive warrant.  She then spent thirteen days in jail but was released once her husband returned the computer to Sprint, which in turn dropped the charges.  There is no evidence in the record that indicates that Sprint acted with malice or that the prosecution lacked probable cause.  However, the record clearly demonstrates that Moore continuously failed to abide by company policy even after her termination and that Sprint gave her a lot of latitude.  In sum, no issues of material fact exist with respect to this count and Sprint is entitled to summary judgment as a matter of law.

<u>CONCLUSION</u>

For the reasons stated above, Defendant Sprint Communications Company, LP's Motion for Summary Judgment (ECF No. 33) is GRANTED and judgment shall be entered in its favor against Plaintiff Rosalie R. Moore.

A separate Order and Judgment follows.

Dated:          September 27, 2012          /s/_____
                                            Richard D. Bennett
                                            United States District Judge